UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                    Criminal No. 19-cr-074-LM-1
                                          Opinion No. 2020 DNH 153
Jared Gil

# O R D E R

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the threat posed to his health by the combination of his asthma and the possibility that he will become infected with COVID-19 while incarcerated at Federal Correctional Institution ("FCI") Fairton in New Jersey.  The government concedes that defendant has exhausted his administrative remedies as required by § 3582(c)(1)(A), but objects to his release.  The court held a video hearing on defendant's motion on July 28, 2020, at which defendant appeared via telephone and made a statement.

## STANDARD OF REVIEW

A court may grant so-called "compassionate release" to a defendant under 18 U.S.C. § 3582(c)(1)(A).  The statute provides, in relevant part, that:

> [T]he court, upon motion of the Director of the Bureau
> of Prisons, or upon motion of the defendant after the
> defendant has fully exhausted all administrative

rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i)  extraordinary and compelling reasons warrant such a reduction . . .

> . . .

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 (sentencing guidelines policy statement on compassionate release).

Where, as here, a motion for compassionate release is properly before the court, the court must determine if defendant is eligible for release.  The statutory language quoted above requires that defendant show that "extraordinary and compelling reasons warrant" a reduction in his sentence, that the court consider the factors set forth in 18 U.S.C. § 3553(a) to the extent applicable, and that the reduction be "consistent" with the Sentencing Commission's applicable policy statements.  18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission's policy statement regarding compassionate release mirrors the statutory

language and adds the requirement that the court find that "the
defendant is not a danger to the safety of any other person or
to the community, as provided in 18 U.S.C. § 3142(g)."  See
U.S.S.G. § 1B1.13(2).  A defendant's dangerousness is a
paramount concern as a court weighs the decision to grant a
defendant early release.  See United States v. Bradshaw, No.
1:15-CR-422, 2019 WL 7605447, at *3 (M.D.N.C. Sept. 12, 2019)
(explaining overlap between dangerousness requirement in
compassionate release policy statement and § 3553(a) requirement
that court consider the need to protect the public).

     In short, a court may reduce a term of imprisonment under
the compassionate release provision if it: (1) finds that
extraordinary and compelling reasons warrant the reduction; (2)
finds that the defendant will not pose a danger to the safety of
any other person or the community; and (3) considers the
sentencing factors outlined in 18 U.S.C. § 3553(a).  See 18
U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13; see also United
States v. Rasberry, No. 2:15-CR-00127-JDL, 2020 WL 3977614, at
*1 (D. Me. July 14, 2020); United States v. Hilow, No. 15-CR-
170-JD, 2020 WL 2851086, at *1 (D.N.H. June 2, 2020).  The
defendant bears the burden of showing that he is entitled to a
sentence reduction.  Hilow, 2020 WL 2851086, at *3.  And the
court has "broad discretion in deciding whether to grant or deny
a motion for sentence reduction."  United States v. Britton,

Crim. No. 18-cr-108-LM, 2020 WL 2404969, at *2 (D.N.H. May 12, 2020) (internal quotation marks omitted).

## BACKGROUND

Defendant was arrested on federal drug-trafficking charges on March 26, 2019 and stipulated to detention at that time.  On August 1, 2019, defendant pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), and 846.  On March 6, 2020, the court sentenced defendant to 40 months imprisonment and three years of supervised release.  The court recommended to the Bureau of Prisons ("BOP") that it house the defendant at FCI Danbury in Connecticut and permit him to participate in a drug treatment program and in mental health treatment.  See doc. no. 60 at 2.

Due to an outbreak of COVID-19 at FCI Danbury, defendant could not be placed there and was re-routed to FCI Fairton in New Jersey.  Because defendant was designated to be housed at FCI Danbury but was re-routed to FCI Fairton, defendant is considered a "holdover" inmate.  Doc. no. 77-1 at 1.  This means that he will not be able to "partake in the usual orientations, operation, or activities new arrivals are offered or allowed" at FCI Fairton.  Id.  On June 15, 2020, defendant filed a pro se

4

motion for compassionate release, which was later supplemented by appointed counsel.

## DISCUSSION

I.   <u>Extraordinary and Compelling Reasons</u>

Defendant contends that he has moderate asthma that puts him at high risk for experiencing severe illness should he become infected with COVID-19.  He has submitted medical records in support of that diagnosis.  <u>See</u> doc. no. 77-5 at 1-2.  He argues that his health condition combined with the known presence of COVID-19 at FCI Fairton constitute extraordinary and compelling reasons supporting his release.  The government concedes that defendant suffers from moderate asthma and its medical expert agrees that this condition puts defendant at high risk for severe illness from COVID-19.  The government further concedes that, in the context of the current pandemic, defendant's high-risk medical condition constitutes an extraordinary and compelling reason.

The court agrees that defendant has established extraordinary and compelling reasons supporting his release. Under the Centers for Disease Control and Prevention ("CDC") guidelines, moderate asthma is among the underlying health conditions that "might" put a person at higher risk for severe

illness from COVID-19.[1]  And defendant has a substantial risk of becoming infected with COVID-19 in the first instance because FCI Fairton has an active outbreak of the virus.  There are four inmates and one staff member at the facility who are currently positive for COVID-19.[2]  Based on a documented risk of infection at FCI Fairton and defendant's undisputed high-risk medical condition, the court finds that extraordinary and compelling reasons support defendant's release.  See United States v. Rich, Crim. No. 17-cr-094-LM, 2020 WL 2949365, at *3-4 (D.N.H. June 3, 2020) (finding that defendant's documented history of bronchitis, reactive airway disease, and smoking combined with current outbreak at the prison constituted extraordinary and compelling reasons); United States v. Hernandez, No. 18-CR-034-04 (PAE), 2020 WL 1684062, at *1, *3 (S.D.N.Y. Apr. 2, 2020) (finding extraordinary and compelling reasons to reduce sentence of defendant who suffered from asthma).

---

[1] CDC, People With Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC AA refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, (last visited July 30, 2020).

[2] BOP, COVID-19, https://www.bop.gov/coronavirus/, (FCI Fairton facility) (last visited August 31, 2020).

II.  Sentencing Factors

Next, the court must consider whether a reduction in defendant's sentence is consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a) to the extent they are applicable.  See 18 U.S.C. § 3582(c)(1)(A).  The § 3553(a) factors a court must consider at sentencing include the nature and circumstances of the defendant's offense and the defendant's personal history and characteristics.  18 U.S.C. § 3553(a)(1). Section 3553(a) requires that the court ensure that the sentence imposed reflects the seriousness of the offense that was committed, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public from further crimes of the defendant, and provides the defendant with needed training, medical care, and other treatment in the most effective way.  18 U.S.C. § 3553(a)(2).  Section 3553(a) further requires the court consider the kinds of sentences available, the Sentencing Guidelines, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims.  18 U.S.C. § 3553(a)(3)-(7).

The court assesses the relevant sentencing factors below. After considering the applicable § 3553(a) factors, the court will consider whether those factors support a reduction in defendant's sentence, or, alternatively, whether they outweigh the "extraordinary and compelling reasons" discussed above and

compel denial of the motion.  See, e.g., United States v. Tidwell, ___ F. Supp. 3d ___, 2020 WL 4504448, at *6 (E.D. Pa. Aug. 5, 2020); United States v. Daugerdas, ___ F. Supp. 3d ___, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020).

A. Need to Protect the Public and Nature and Circumstances of Offense

Defendant was part of a serious drug-trafficking conspiracy in which he orchestrated or participated in multiple hand-to-hand sales of fentanyl, a dangerous drug.  Defendant also acted in a managerial role by conscripting his co-defendant (his cousin) to be a "runner" for him and drive him to various drug transactions.  There is no evidence, however, that defendant possessed a firearm or used violence to carry out the drug-trafficking conspiracy.

Defendant's federal offense appears to have been driven largely by his substance abuse issues, which began at a young age and continued up to the time of the federal offense.  Since being incarcerated, however, defendant has endeavored to confront his substance abuse issues.  While incarcerated at the Strafford County House of Corrections, defendant successfully completed the Therapeutic Community Program, which is an intensive drug and alcohol treatment program.  The program counselor reported that defendant's progress during the program

8

was "excellent."  Doc. no. 82 at 1.  That counselor also
reported that defendant excelled as a volunteer speaker for the
jail diversion program where he shared his story with groups of
high school students touring the jail.  Defendant completed
various other rehabilitative classes, including anger
management, seeking safety, parenting, and career counseling.
The court finds that these rehabilitative efforts mitigate
defendant's dangerousness.  See Rich, 2020 WL 2949365, at *4
(finding that defendant's rehabilitative efforts mitigated his
dangerousness and supported release); Hilow, 2020 WL 2851086, at
*4-5 (same).

        The court also considers defendant to pose a low risk for
dangerousness based on his minimal criminal history prior to the
federal offense.  Defendant's federal offense—committed when he
was age 25—was his first adult criminal conviction.  Defendant
has a series of juvenile convictions from when he was 14 and 15
years old, likely attributable to his fractured home life and
time in and out of foster care.  But between ages 16 and 25
defendant had no convictions.  Due to his lack of adult criminal
convictions, defendant had a criminal history score of zero,
placing him in criminal history category I, the lowest possible
category under the Sentencing Guidelines.  Cf. Delacruz v.
United States, No. 18-CV-811-LM, 2020 WL 3270503, at *4, *6
(D.N.H. June 17, 2020) (denying compassionate release where

defendant was sentenced on federal drug trafficking offenses as
a career offender after engaging in a pattern of similar yet
escalating drug offenses of the course of two decades).

Based on defendant's minimal criminal history prior to his
federal offense and his efforts to rehabilitate himself, the
court finds that if released he is unlikely to pose a danger to
the safety of any person or the community.

B. <u>Provision of Needed Educational or Vocational Training,
Medical Care, or Other Treatment in Most Effective Manner</u>

As discussed above, while in pretrial detention in state
custody, defendant achieved substantial personal growth with the
help of rehabilitative programming.  He completed an intensive
drug and alcohol treatment program and became a spokesperson for
the jail diversion program for high school students.  To further
support defendant's personal growth during his time in federal
custody, the court recommended to BOP that defendant participate
in a drug treatment program and any available mental health
treatment.

Now, however, due to his holdover status at FCI Fairton and
the restrictions implemented to prevent the spread of COVID-19,
defendant has no access to drug treatment programming,
counseling, or educational or vocational classes.  <u>See</u> doc. no.
77-1 at 1.  At this point, defendant's incarceration is failing

to fulfill the need for his sentence to provide him educational
and vocational training or experience, substance abuse
treatment, and mental health treatment in any manner, let alone
"in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).
Indeed, if defendant were to complete his term of imprisonment
without rehabilitative programming, he would be more likely to
return to criminal behavior and drug use upon release. See
United States v. Schafer, 6:18-CR-06152 EAW, 2020 WL 2519726, at
*7 (W.D.N.Y May 18, 2020) (explaining that sentencing factors
favored compassionate release in part because the lack of
treatment and programming in the prison made it more likely that
defendant would eventually return to illegal drug use if he
remained incarcerated).

On the other hand, if released, defendant would have some
access, either in-person or remotely, to substance abuse
treatment and mental health treatment that would help him
continue his rehabilitation and sobriety. See 18 U.S.C. §
3553(a)(2)(D). And, importantly, defendant already has a job
offer awaiting him upon his release. See doc. no. 77-11. For
these reasons, the court finds that defendant's release to home
confinement is the best way for him to access the substance
abuse treatment, mental health treatment, and employment
opportunities that will help him maintain and build upon the

progress he made while in pretrial detention.  This finding
weighs in favor of defendant's release.

    C. Seriousness of the Offense, Adequate Deterrence, Respect
       for the Law, and Just Punishment

    The court also finds that a reduction in defendant's
sentence would reflect the seriousness of the offense, afford
adequate deterrence, promote respect for the law, and provide
just punishment.  See 18 U.S.C. § 3553(a)(2)(A), (B).  Defendant
has served 17 months of his 40-month sentence.  His release date
is projected for January 24, 2022—about 16 months from now—
meaning defendant has served approximately half of his sentence,
assuming good-time credit.  A 17-month imprisonment is
significant for defendant, as he has never served time as an
adult.

    D. Weighing the Sentencing Factors Against the Extraordinary
       and Compelling Reasons

    Finally, the court weighs the sentencing factors against
the strength of defendant's extraordinary and compelling reasons
for release.  See Tidwell, 2020 WL 4504448, at *6; Daugerdas,
2020 WL 2097653, at *4.  Defendant's high-risk medical condition
and the active outbreak of COVID-19 at FCI Fairton are
extraordinary and compelling reasons that weigh in favor of his
release.  Defendant's limited criminal history and
rehabilitative progress demonstrate that he will not pose a

danger to the community if released on conditions.  And
defendant's need for—but lack of access to—substance abuse
treatment, mental health treatment, and vocational opportunities
weigh heavily in favor of his release.

Considering all these factors, the court finds that
defendant has met his burden of establishing that he is entitled
to a sentence reduction under § 3582(c)(1)(A).  A reduction of
defendant's sentence to time served followed by a term of
special supervised release on home confinement until **January 24,
2022** will best serve the goals of sentencing.

## CONCLUSION

For the foregoing reasons, the court grants defendant's
motion for reconsideration (doc. no. 84), his motion for
compassionate release (doc. no. 72), and his supplemental motion
for compassionate release (doc. no. 77) as follows:

1) The defendant's sentence will be reduced to time served.

2) The defendant will be placed on a special term of
supervised release until **January 24, 2022**, which is equivalent
to what his discharge date would have been from the BOP, during
which time he will remain on home confinement under the terms of
release outlined in Appendix A.

3) Following the term of special supervised release, the defendant will be placed on supervised release for a term of three years.

4) During the terms of special supervised release and supervised release, the defendant shall be subject to the Supervision Conditions as set forth in Appendix A.

5) The BOP shall release the defendant immediately following processing.

6) The court recommends that the BOP screen the defendant for COVID-19 within twelve hours prior to his release, and if he is displaying symptoms consistent with COVID-19, test the defendant and share the results with the United States Probation Office in the District of New Hampshire.

7) The court will issue an amended criminal judgment.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 8, 2020

cc:   Counsel of Record
      U.S. Probation
      U.S. Marshal

14

## **APPENDIX A**

**SUPERVISION CONDITIONS:**

Within seventy-two hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the district to which the defendant is released.

While under supervision, the defendant must comply with the following mandatory conditions:

The defendant must not commit another federal, state, or local crime.

The defendant must not unlawfully possess a controlled substance.

The defendant must refrain from any unlawful use of a controlled substance.  The defendant must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

The defendant must cooperate in the collection of DNA as directed by the probation officer.

While under supervision, the defendant must also comply with the following standard conditions of supervision that have been adopted by this court:

1. The defendant must report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of his release from imprisonment, unless the probation officer instructs him to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, the defendant will receive instructions from the court or the probation officer about how and when he must report to the probation officer, and he must report to the probation officer as instructed.

3. The defendant must not knowingly leave the federal judicial district where he is authorized to reside without first getting permission from the court or the probation officer.

4. The defendant must answer truthfully the questions asked by his probation officer.

5. The defendant must live at a place approved by the probation officer.  If the defendant plans to change where he lives or anything about his living arrangements (such as the people he lives with), he must notify the probation officer at least 10 days before the change.  If notifying the probation officer in advance is not possible due to unanticipated circumstances, the defendant must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. The defendant must allow the probation officer to visit him at any time at his home or elsewhere, and he must permit the probation officer to take any items prohibited by the conditions of the defendant's supervision that he or she observes in plain view.

7. The defendant must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses him from doing so.  If the defendant does not have full-time employment he must try to find full-time employment, unless the probation officer excuses him from doing so.  If the defendant plans to change where he works or anything about his work (such as his position or his job responsibilities), the defendant must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the defendant must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. The defendant must not communicate or interact with someone he knows is engaged in criminal activity.  If the defendant knows someone has been convicted of a felony, he must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If the defendant is arrested or questioned by a law enforcement officer, he must notify the probation officer within 72 hours.

10. The defendant must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the

specific purpose of causing bodily injury or death to another
person such as nunchakus or tasers).

11. The defendant must not act or make any agreement with a
law enforcement agency to act as a confidential human source or
informant without first getting the permission of the court.

12. If the probation officer determines that the defendant
poses a risk to another person (including an organization), the
probation officer may require him to notify the person about the
risk and the defendant must comply with that instruction.  The
probation officer may contact the person and confirm that the
defendant has notified the person about the risk.

13. The defendant must follow the instructions of the
probation officer related to the conditions of supervision.


In addition, the defendant must comply with the following
special conditions:

1. Upon release, the defendant must obtain transportation
directly from the prison to his approved residence.  The
defendant must eliminate or minimize any stops during that
transport.

2. The defendant must self-quarantine in an approved
residence during the first fourteen days of his supervised
release.

3. The defendant is restricted to his residence at all
times during his term of special supervised release except for
employment; education; religious services; medical, substance
abuse, or mental health treatment; attorney visits; court
appearances; court-ordered obligations; or other activities as
pre-approved by the officer.  During this time period, the
defendant will be monitored by Location Monitoring technology at
the discretion of the probation officer.  The defendant must
follow the rules and regulations of the location monitoring
program.  The defendant must pay for the cost of the program to
the extent he is able, as determined by the probation officer.
If, after six months, defendant has not violated this condition
or any other condition of his special supervised release, the
court will favorably consider his request to lift this
condition.

4. The defendant must participate in an outpatient substance abuse treatment program and follow the rules and regulations of that program.  The probation officer will supervise the defendant's participation in the program (provider, location, modality, duration, intensity, etc.).  The defendant must pay for the cost of treatment to the extent he is able, as determined by the probation officer.

5. The defendant must not use or possess any controlled substances without a valid prescription.  If the defendant does have a valid prescription, he must disclose the prescription information to the probation officer and follow the instructions on the prescription.

6. The defendant must submit to substance abuse testing to determine if he has used a prohibited substance.  The defendant shall pay for the cost of testing to the extent he is able, as determined by the probation officer.  The defendant must not attempt to obstruct or tamper with the testing methods.

7. The defendant must not use or possess alcohol.

8. The defendant must not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic marijuana, bath salts, etc.) that impair a person's physical or mental functioning, whether or not intended for human consumption, except with the prior approval of the probation officer.

9. The defendant must not go to, or remain at, any place where he knows controlled substances are illegally sold, used, distributed, or administered without first obtaining the permission of the probation officer.

10. The defendant must participate in a cognitive-behavioral treatment program and follow the rules and regulations of that program.  The probation officer will supervise the defendant's participation in the program (provider, location, modality, duration, intensity, etc.).  Such programs may include group sessions led by a counselor or participation in a program administered by the probation office.  The defendant must pay for the cost of treatment to the extent he is able, as determined by the probation officer.

11. The defendant must submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. $

4

1030(e)(1)), other electronic communications or data storage
devices or media, or office, to a search conducted by a United
States Probation Officer.  Failure to submit to a search may be
grounds for revocation of release.  The defendant must warn any
other occupants that the premises may be subject to searches
pursuant to this condition.  The probation officer may conduct a
search under this condition only when reasonable suspicion
exists that the defendant has violated a condition of
supervision and that the areas to be searched contain evidence
of this violation.  Any search must be conducted at a reasonable
time and in a reasonable manner.

5